**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

TARA MURPHY,

      Plaintiff,

  v.                                       Case Number: 2:26-cv-1152

CITY OF OAK CREEK:
TONI VANDERBOOM,

      Defendants.

## COMPLAINT

Plaintiff, Tara Murphy, through her undersigned attorneys, alleges in this Complaint as follows:

### NATURE OF THE CASE

1. Plaintiff, Tara Murphy ("Murphy"), alleges that Defendant, the City of Oak Creek ("the City"), violated the Americans with Disabilities Act of 1990 ("ADA"), as amended by the Civil Rights Act of 1991, [42 U.S.C. § 12101, *et seq.*], and the ADA Amendments Act of 2008 [42 U.S.C. § 12101, *et seq.*]; and, further alleges that the City and Defendant, Toni Vanderbook ("Vanderboom"), violated the Family and Medical Leave Act of 1993, ("FMLA") [29 U.S.C. § 2601, *et seq.*] by discriminating against Murphy based on protected status, interfering with her right to take protected leave and retaliating against her for protected activity.

### JURISDICTION AND VENUE

2. Jurisdiction over Murphy's ADA claims is conferred on this court by 28 U.S.C. § 1331. Jurisdiction over Murphy's claims under the FMLA is conferred on this Court by 29 U.S.C. § 2617(a)(2).

3.     The Eastern District of Wisconsin, Milwaukee Division, is the proper federal venue for this action pursuant to 28 U.S.C. § 1391, because the Defendants are located in the Eastern District, Milwaukee Division, and its unlawful actions occurred in the Eastern District, Milwaukee Division.

## CONDITIONS PRECEDENT

4.     All conditions precedent to this action within the meaning of Rule 9(c), Fed. R. Civ. P., have been performed or have otherwise occurred.

## JURY DEMAND

5.     Murphy demands that her case be tried by a jury of her peers.

## PARTIES

6.     Plaintiff, Murphy, is an adult citizen of Wisconsin, domiciled at 629 Hayes Ave, Racine, WI 53405.

7.     Defendant, the City, is a municipality created under the laws of the State of Wisconsin, with administrative offices located at 8040 S. 6th Street, Oak Creek, WI 53154. The City has continuously had and does now have at least fifty (50) employees in the current or preceding calendar year.

8.     Defendant, Vanderboom, is an adult domiciled in the State of Wisconsin, who was at all times relevant hereto the City's Human Resources Director, was an "employer" under 29 U.S.C. § 2611(4)(A), exercised operational control, had authority over leave administration, had authority to hire/fire employees, had control over payroll and personnel, had supervisory authority over Murphy, and was responsible in whole or part for the violation of Murphy's FMLA rights.

## OPERATIVE FACTS
### Murphy's tenure at the City

9.     Murphy was employed by the City from September 19, 2022, to June 24, 2025,

when Defendants notified that her employment had been terminated retroactively on June 16, 2025.

10. Murphy worked more than 1,250 hours during her last twelve months of employment.

11. Murphy was employed as a salaried employee for more than 12 months as of June 24, 2025.

12. During the in-person interview process on July 19, 2022, the City informed Murphy that her position involved a combination of working remotely and in the office.

13. The City provided a flexible work environment to its employees by allowing remote work and use of flex scheduling.

14. Nearly all of Murphy's tasks could be performed remotely which she demonstrated during consecutive weeks of remote work.

**Murphy's disabilities**

15. Murphy has been diagnosed with endometriosis or adenomyosis and a chronic gastrointestinal disorder.

16. Murphy's endometriosis or adenomyosis causes chronic pelvic pain, heavy periods, pain during and after sex, and inflammation that impact bowels, bladder, and overall physical, mental, and social well-being, interference with concentration, and episodic inability to work.

17. Murphy's gastrointestinal disorder causes burning aching pain in her stomach and intestines, indigestion, nausea, vomiting, fullness after eating, frequent bathroom trips, diarrhea, constipation, bloating, gas, bubble gut, bowel movement changes, fatigue, intestinal metaplasia, debilitating fatigue, mood changes, and significant disruption to daily life, relationships, work, and mental health.

**Murphy's request for and use of accommodation**

18.     Murphy's application for FMLA-qualifying leave was approved on March 8, 2024, and she first used that leave on March 11, 2024.

19.     The City and Vanderboom administered Murphy's application for FMLA-qualifying leave.

20.     Vanderboom initially accommodated Murphy's disabilities by allowing frequent bathroom breaks and flexing of her hours.

21.     Over the course of 2024 and early 2025, Murphy's symptoms caused by her disabilities worsened.

22.     Murphy's disabilities caused her to increase her FMLA leave in November/December 2024 and January 2025.

**Defendants' retaliation against Murphy**

23.     In response to Murphy's disabilities and increased FMLA leave Vanderboom retaliated by reprimanding Murphy for her bathroom use, remote work, and leadership style. Vanderboom further retaliated by withholding approval for Murphy's FMLA requests and excluding her from important communication.

24.     Vanderboom retaliated against Murphy for exercising her FMLA rights and refused to accommodate Murphy's disabilities by disciplining her for being "tardy" on January 2, 3, 17 and 23, 2025.

25.     On January 23, 2025, Vanderboom issued a Written Warning to Murphy without prior coaching or verbal warning in violation of the City's progressive discipline policy.

26.     The Written Warning cited insignificant mistakes that might warrant correction for any other employee, but not formal discipline.

27.     Upon receiving the Written Warning, Murphy had her doctor's office update her

medical certifications.

28. Vanderboom agreed that the "tardy" dates were FMLA-covered and removed them, but refused to revise the Written Warning.

29. From April 3 through May 11, 2025, Murphy was on FMLA leave for surgery regarding her endometriosis or adenomyosis.

30. On May 12, 2025, Murphy returned to remote work following her FMLA leave for surgery.

31. On May 14, 2025, Defendants placed Murphy on a Performance Improvement Plan ("PIP").

32. On May 27, 2025, Defendants informed Murphy she was not allowed to work remotely.

33. Prior to May 27, 2025, and prior to Murphy taking FMLA leave, Defendants were allowing Murphy to work remotely as an accommodation for her disabilities.

34. Defendants forced Murphy to exhaust her FMLA leave during May 28 through June 3, 2025.

35. Murphy took approved unpaid leave June 4 through June 13, 2025.

36. City policy allows a 90-day extension of unpaid medical leave following FMLA leave.

37. Murphy requested that Defendants extend her unpaid medical leave beyond June 13, 2025.

38. Defendants refused to extend Murphy's unpaid medical leave beyond June 13, 2025.

39. The City created intolerable working conditions for Murphy and constructively discharged Murphy from her employment because of her disabilities and exercise of FMLA rights.

40. The City was covered by the FMLA.

41. Murphy was entitled to leave under the FMLA.

42. Murphy provided sufficient notice to the City of her intent to take FMLA leave.

**Defendants' favorable treatment of Murphy's comparators**

43. Defendants treated Murphy less favorably than her comparably situated co-workers.

44. Leslie Flynn, Communications Coordinator, was permitted to work remotely on a regular basis for months while her family member had an FMLA condition.

45. Max Gagin, Deputy City Administrator/Finance Officer, worked remotely with no advance approval or notice.

46. Melissa Gerum ("Gerum"), Finance Payroll employee, worked a flex schedule and remotely as needed, when her spouse had an FMLA qualifying condition. The City also approved Gerum's extended leave of absence for her friend's health that did not qualify for FMLA leave.

47. Taryn Knezevic, Treasury Assistant, was granted a continuous altered work schedule, flex time, and allowed to use unpaid time off repeatedly after her FMLA was exhausted.

48. Brent Miller, Assistant IT Director, was permitted to work remotely.

49. Taylor Parry, Executive Administrative Assistant, was allowed to alter her schedule to 10-hour days, Monday through Thursday and work remotely as needed.

50. Melanie Perez, Planner, was permitted to work remotely because of her FMLA related serious health condition without the equipment or ability to complete her work.

51. Matthew Sullivan, Assistant City Administrator/Engineer, was allowed to work remotely because his kids were involved in sports.

52. Vanderboom, HR Director, worked remotely and altered her schedule with no advance approval or notice. For example, Vanderboom worked remotely so she could have cabinets delivered, home repairs, when she had issues with pets, or forgot her laptop at home.

53.     Laura Yocum, Executive Fire Assistant, was allowed to work remotely as needed, for situations such as inclement weather or childcare needs.

54.     Brian Zangl was approved for an extended unpaid leave of absence during March through October 2024.

**FIRST COUNT**
**AMERICANS WITH DISABILITIES ACT**
**DISABILITY DISCRIMINATION**

55.     As and for a first Count, Murphy re-asserts the allegations recited above at paragraphs 1 through 54 and fully incorporates those paragraphs herein by reference.

56.     The allegations more particularly described above constituted violations of the ADA, the Civil Rights Act of 1991, and the ADA Amendments Act of 2008, when the City routinely targeted and treated Murphy less favorably than comparably situated, non-disabled employees, which led to the constructive termination of Murphy's employment, causing her to suffer losses of wages, benefits, expenses, insurance, emotional pain, suffering, humiliation, embarrassment, and mental anguish, all to her damage.

**SECOND COUNT**
**AMERICANS WITH DISABILITIES ACT**
**RETALIATION**

57.     As and for a second Count, Murphy re-asserts the allegations recited above at paragraphs 1 through 54 and fully incorporates those paragraphs herein by reference.

58.     The allegations more particularly described above constituted violations of the ADA, the Civil Rights Act of 1991, and the ADA Amendments Act of 2008, when the City targeted Murphy for engaging in protected activity related to her disabilities, which led to the constructive termination of Murphy's employment, causing her to suffer losses of wages, benefits, expenses, insurance, emotional pain, suffering, humiliation, embarrassment, and mental anguish, all to her damage.

## THIRD COUNT
## AMERICANS WITH DISABILITIES ACT
## FAILURE TO ACCOMMODATE

59. As and for a third Count, Murphy re-asserts the allegations recited above at paragraphs 1 through 54 and fully incorporates those paragraphs herein by reference.

60. The allegations more particularly described above constituted violations of the ADA, the Civil Rights Act of 1991, and the ADA Amendments Act of 2008, when Murphy is a qualified individual with disabilities; the City was aware of Murphy's disabilities; and the City failed to reasonably accommodate Murphy's disabilities, causing her to suffer losses of wages, benefits, expenses, insurance, emotional pain, suffering, humiliation, embarrassment, and mental anguish, all to her damage.

## FOURTH COUNT
## FMLA INTERFERENCE §2615(a)(1)

61. As and for a fourth Count, Murphy re-asserts the allegations recited above at paragraphs 1 through 54 and fully incorporates those paragraphs herein by reference.

62. The City deprived Murphy of FMLA entitlement in violation of 29 U.S.C. § 2615(a)(1) on the basis that she was eligible for the FMLA's protections; the City was covered by the FMLA; Murphy was entitled to leave under the FMLA; she provided sufficient notice of her intent to take FMLA leave; and, the City denied her FMLA benefits to which she was entitled.

63. The allegations more particularly described above regarding the intentional discriminatory practices of the City, were not made with good faith or reasonable grounds for believing that the conduct did not violate the Family and Medical Leave Act of 1993, [29 U.S.C. § 2601, *et seq.*]

64. The allegations more particularly described above caused Murphy wage

loss, benefits loss, and expenses, all to her damage.

## FIFTH COUNT
## FMLA RETALIATION §2615(a)(2)

65.     As and for a fifth Count, Murphy re-asserts the allegations recited above at paragraphs 1 through 54 and fully incorporates those paragraphs herein by reference.

66.     The City violated 29 U.S.C. § 2615(a)(2) by taking the materially adverse action of constructively terminating her employment on account of her activity protected by the FMLA.

67.     The allegations more particularly described above regarding the intentional discriminatory practices of the City, were not made with good faith or reasonable grounds for believing that the conduct did not violate the Family and Medical Leave Act of 1993, [29 U.S.C. § 2601, *et seq.*]

68.     The allegations more particularly described above caused Murphy wage loss, benefits loss, and expenses, all to her damage.

WHEREFORE Plaintiff, Tara Murphy, demands relief as follows:

A.     damages equal to the amount of wages, employment benefits, and other compensation denied or lost by reason of the FMLA violation pursuant to 29 U.S.C. § 2617;

B.     the interest on said damages calculated at the prevailing rate pursuant to 29 U.S.C. § 2617;

C.     equitable relief as may be appropriate, including employment, reinstatement, and promotion pursuant to 29 U.S.C. § 2617;

D.     a reasonable attorney fee pursuant to 29 U.S.C. § 2617;

E.     reasonable expert witness fees pursuant to 29 U.S.C. § 2617;

F.     costs of the action pursuant to 29 U.S.C. § 2617;

G.     an additional amount as liquidated damages equal to the sum of damages and

interest pursuant to 29 U.S.C. § 2617;

H.     compensatory and punitive damages pursuant to 42 U.S.C. § 1981a(b);

I.     a reasonable attorney's fee, including litigation expenses, and costs pursuant to 42 U.S.C. § 12205; and

J.     such other relief as the court deems just and equitable.

Dated this 29th day of June, 2026.

*Electronically signed by Alan C. Olson*
Alan C. Olson, SBN: 1008953
Tristan N. Bullington, SBN: 1138110
Attorneys for Plaintiff
Alan C. Olson & Associates, S.C.
2880 S. Moorland Rd.
New Berlin, WI 53151
Telephone: (262) 785-9606
Fax: (262) 785-1324
Email: AOlson@Employee-Advocates.com
Email: TBullington@Employee-Advocates.com